**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOUNTHOM CHALEUNSAP,<br><br>        Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. 1:03-cv-6916 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |

      Plaintiff Bounthom Chaleunsap ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying his claim for disability benefits under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed his complaint on December 24, 2003, and his opening brief on January 10, 2005. The Commissioner filed her opposition to the appeal on March 15, 2005. Claimant filed a reply brief on March 29, 2005.

      Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated August 11, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

///

**JURISDICTION**

On October 25, 2001, claimant filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since January 1, 1999, due to headaches, poor concentration, difficulty sleeping, lack of energy, irritability, body pain, anxiety, depression and fear of being around others. (Administrative Record ("AR") 95-107, 113, 127). The application was denied initially and on reconsideration. On March 11, 2003, claimant appeared before Administrative Law Judge ("ALJ") James Ross, at which time he heard testimony from claimant, who was assisted by a Laotian interpreter. (AR 34-50). On April 17, 2003, the ALJ issued a decision finding that claimant was not disabled. (AR 18-26). The Appeals Council denied a request for review on October 24, 2003. (AR 4-7). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was born on February 3, 1953, making him 50 years old on the date of the ALJ's decision. (AR 45, 26). It was noted by the ALJ that claimant had previously filed three other applications for disability benefits, receiving two prior unfavorable decisions in March of 1996 and August of 1999, each of which were affirmed upon review by the Appeals Council. (AR 18).

At the administrative hearing held on March 11, 2003, Claimant testified, through a Laotian/English interpreter, that he is unable to read and write in English. (AR 45). He indicated that he had been seeing a psychiatrist, Dr. Tieu, once a month, for a long time. (AR 45-46). Nevertheless, claimant stated that he believed his mental problems were getting worse, which he described as having bad dreams and difficulty sleeping at night and hearing noises during the daytime. (AR 46). Regarding physical problems, claimant testified that he has pain in his lower back, near his waist, which causes him to have problems working. (AR 47). He has the pain in his

///

///

lower back when he sits, sleeps or walks. (AR 47). He testified that he has a lot of pain in his lower back when he sits for about an hour. (AR 47). He described the pain as feeling like a really bad headache. (AR 48). Claimant stated that he can stand at one time for about an hour and sit at one time for about an hour. (AR 48). He indicated that, over a whole day, he spends more time sitting or sleeping than standing. (AR 48). Claimant testified that he does not have pain or swelling in any of his joints besides his lower back. (AR 49).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one

///

///

conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work he has performed in the past. If claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."
///

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that claimant has not engaged in substantial gainful activity since his alleged onset date. (AR 19).  At step two, the ALJ determined that claimant has the severe impairments of low back pain, of an unclear etiology, depression and anxiety, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 20).  The ALJ indicated that the overall nature, onset, duration, frequency, radiation and intensity of claimant's alleged physical limitations did not appear to be corroborated by laboratory, clinical and x-ray findings. (AR 22).  The ALJ thus found that claimant's allegations regarding his limitations were not credible to the degree alleged. (AR 25).

The ALJ concluded that claimant, from a physical standpoint, has the residual functional capacity to perform a full range of medium exertion work. (AR 23).  He further determined that, from a mental standpoint, and despite claimant's depression and anxiety, claimant is capable of performing simple repetitive tasks. (AR 23).  The ALJ found that claimant has no past relevant
///

work. (AR 24). In light of claimant's ability to perform substantially all of the requirements of medium work, and considering claimant's age, education, and work experience, the ALJ concluded that claimant is capable of making a successful adjustment to unskilled work that exists in significant numbers in the national economy. (AR 24-25). The ALJ noted that, although claimant is limited to simple repetitive tasks, this limitation does not significantly erode the occupational base of work at the medium level of exertion. (AR 24-25). Accordingly, the ALJ determined that claimant was not disabled within the meaning of the Social Security Act. (AR 25-26).

**ISSUES**

Claimant contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1. The ALJ's conclusion that claimant's mental impairments only preclude him from doing unskilled work is not supported by substantial evidence;

2. The ALJ's physical residual functional capacity finding is not supported by substantial evidence; and

3. The ALJ erred by finding claimant's subjective complaints not entirely credible.

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Residual Functional Capacity Assessment**

Residual functional capacity ("RFC") is defined as "what an individual can still do despite his or her limitations." SSR 96-8p. Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ. SSR 96-5p. It is thus the ALJ's responsibility to make a RFC determination. However, in making his finding, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-8p.

///

///

The ALJ found that claimant had the RFC to perform a full range of medium exertion work. (AR 23). With regard to Claimant's non-exertional limitations, the ALJ additionally determined that, despite claimant's depression and anxiety, claimant is capable of performing simple repetitive tasks. (AR 23). The ALJ noted that, although claimant is limited to simple repetitive tasks, this limitation does not significantly erode the occupational base of work at the medium level of exertion. (AR 24-25).

It appears that claimant's primary contention is that the ALJ's RFC determination is unsupported by the evidence of record in this case. (Court Doc. 16, pp. 3-5). The undersigned disagrees.

**1. Mental Limitations**

Claimant asserts that substantial record evidence, including the medical opinions of his treating medical professionals, Hoang Tieu, M.D., and Virender Singh Kaleka, M.D., and examining physician, Shireen R. Damania, M.D., establishes that he suffers from disabling mental impairments. (Court Doc. 16, pp. 3-4). He argues that the ALJ erred by rejecting the opinions of Drs. Tieu and Kaleka and that the ALJ erroneously reported the opinions of examining physician Damania to find that he did not suffer from disabling mental impairments, a finding contradicted by the evidence of record. (Court Doc. 16, p. 3).

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 744, 751 (9th Cir. 1989) (citations omitted); see, also, 20 C.F.R. § 404.1527. To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence. Flaten v. Secretary of Health and Human Serv., 44 F.3d 1453, 1463 (9th Cir. 1995); Fair, 885 F.2d at 605. Historically, the Ninth Circuit courts have recognized conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; and the lack of medical

///

///

support for doctors' reports that are based substantially on the claimant's subjective complaints of pain, as specific legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair, 885 F.2d at 604.

Claimant asserts that his two treating psychiatrists, Drs. Kaleka and Tieu, confirm that he is totally disabled under the law. (Court Doc. 16, p. 3).

Dr. Kaleka's progress notes, dated June, July and August 2002, reveal that he diagnosed claimant with arthritis, post traumatic stress syndrome and depression/anxiety. (AR 185-186, 194-195). On March 3, 2003, Dr. Kaleka filled out a questionnaire indicating that he felt claimant's rheumatoid arthritis precluded him from performing any full-time work at any exertional level, including the sedentary level. (AR 211). Dr. Kaleka noted that claimant "doesn't pay attention to anything" and opined that claimant could sit or stand and/or walk, at one time, for one to two hours and could sit or stand and/or walk, over an eight-hour period, for two to four hours. (AR 211). Although Dr. Kaleka indicated that one of claimant's primary impairments was depression/anxiety, Dr. Kaleka failed to discuss any limitations resulting from these assessed mental impairments. (AR 211).

On September 27, 2001, Dr. Tieu performed a psychiatric evaluation. (AR 197-199). Claimant's chief complaints were of depression, irritability, being easily angered, difficulty sleeping and having nightmares. (AR 197). Dr. Tieu noted that claimant had decreased concentration, decreased short-term memory and impaired judgment and insight. (AR 198-199). He diagnosed claimant with post traumatic stress disorder, major depressive disorder, recurrent, severe, with psychotic features, and chronic back pain. (AR 199). He also gave claimant a global assessment of functioning ("GAF") score of 50.[1] (AR 199). Dr. Tieu prescribed medication for claimant's depression, anxiety, nervousness and insomnia. (AR 199).

///
///

---

[1] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

On February 18, 2003, Dr. Tieu filled out a form indicating that claimant had a depressive syndrome, generalized persistent anxiety and recurrent and intrusive recollections of a traumatic experience. (AR 200-201). He opined that claimant had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace and three episodes of decompensation, each of extended duration. (AR 202). Dr. Tieu further indicated that claimant's abilities to understand, remember and carry out simple one-or-two step job instructions and to maintain concentration and attention for at least two hour increments were moderately impaired, and his abilities to relate and interact with supervisors and coworkers, to understand, remember and carry out an extensive variety of technical and/or complex job instructions, to deal with the public, and to withstand the stress and pressure associated with an eight-hour work day and day-to-day work activity was markedly impaired. (AR 204).

In making his mental RFC determination, the ALJ rejected the opinions of claimant's treating medical professionals, Drs. Tieu and Kaleka. (AR 21-23). The ALJ indicated that Dr. Kaleka fails to provide any actual laboratory findings to support or confirm his diagnosis. (AR 21-22). The ALJ noted that Dr. Kaleka provided no real evidence to support his findings. (AR 23). Moreover, the ALJ noted that claimant's hearing testimony was inconsistent with Dr. Kaleka's findings suggesting that his difficulties had resolved or improved.[2] (AR 23). Nevertheless, as noted above, Dr. Kaleka's reports primarily address claimant's physical difficulties, providing no insight into his psychological limitations as a result of his assessed depression/anxiety. Although Dr. Kaleka diagnosed claimant with post traumatic stress syndrome and depression/anxiety, his medical reports failed to discuss any limitations resulting from these assessed mental impairments, and the mere diagnosis of an impairment does not demonstrate that a claimant is disabled within the meaning of the Act.

The ALJ also accorded little weight to the findings of Dr. Tieu. (AR 21-23). He noted that it appeared that Dr. Tieu based his diagnoses and restrictions on claimant's subjective complaints, to

///

---

[2] At the administrative hearing, Claimant testified that he does not have pain or swelling in any of his joints besides his low back. (AR 49).

which the ALJ gave little weight. (AR 22-23). The ALJ indicated that Dr. Tieu relied on claimant's reported history and complaints and provided no additional records of treatment to support his assessments. (AR 22). The ALJ concluded that there was no objective evidence to suggest that claimant's depression and anxiety preclude him from engaging in simple repetitive tasks. (AR 23).

Dr. Damania examined claimant on March 25, 2002. (AR 177-180). Dr. Damania indicated that claimant offered no information at the time of the psychiatric evaluation. (AR 177). Instead, when claimant was asked to show his picture identification, claimant took a bag filled with his medications and "threw it across the interviewer's desk knocking down items on the interviewer's desk and then he just left the interview room and walked out into the parking lot." (AR 177-178). It was noted that Dr. Damania "became quite intimidated" and was concerned that claimant "might return and be assaultive." (AR 178). Dr. Damania noted that she was unable to determine whether claimant was being manipulative or whether he legitimately had difficulty with anger control, had poor impulse control and had a low frustration for tolerance. (AR 178). From the brief encounter with claimant, and based on general observations, Dr. Damania opined that claimant's impulse control and frustration tolerance were distinctly impaired and his insight and judgment were both impaired. (AR 178). Dr. Damania diagnosed possible psychotic disorder, not otherwise specified and a personality disorder, not otherwise specified, with antisocial features, and gave claimant a GAF score of 50. (AR 179). She concluded from his behavior that claimant was still able to understand, carry out and remember simple instructions, but would have difficulty responding appropriately to coworkers, supervisors and the public and is not able to deal with changes in a routine work setting. (AR 179). Again, Dr. Damania's assessment was based primarily on claimant's behavior during the extremely brief interview wherein claimant did not utter a single word. (AR 178-179).

Regarding claimant's mental limitations, the ALJ noted that while claimant was scheduled for a consultative evaluation of his alleged mental impairments with Dr. Damania, this examination was not actually performed, because claimant failed to cooperate. (AR 23). The ALJ agreed with the reviewing state agency physician, Evangeline Murillo, M.D., that there was insufficient evidence
///

to determine the severity of claimant's mental condition due to claimant's presentation at the examination and the lack of any sufficient longitudinal evidence. (AR 21, 183). The ALJ thus found no objective evidence to suggest that his depression and anxiety preclude him from performing simple repetitive tasks, thus adopting the finding of examining physician Damania. (AR 23).

The undersigned judicial officer agrees with the ALJ that the evidence of record does not indicate that claimant's mental impairments prevent him from the performance of simple repetitive tasks. As noted above, Dr. Kaleka provided no real evidence to support his findings, and, although Dr. Kaleka diagnosed claimant with post traumatic stress syndrome and depression/anxiety, his medical reports failed to discuss any limitations resulting from these assessed mental impairments. Dr. Kaleka failed to provide any actual laboratory findings to support or confirm his diagnosis, and, in any event, his reports primarily address claimant's physical difficulties, providing no evidence supporting psychological limitations as a result of his assessed depression/anxiety. In addition, it is apparent that Dr. Tieu based his diagnoses and restrictions on claimant's subjective complaints, to which the ALJ gave little weight. Dr. Tieu relied on claimant's reported history and complaints and provided no additional records of treatment to support his assessments. As noted by the ALJ, there was no objective evidence provided by Dr. Tieu to suggest that claimant's depression and anxiety preclude him from engaging in simple repetitive tasks. (AR 23). The ALJ thus properly rejected the opinions of Drs. Kaleka and Tieu regarding claimant mental ability. Finally, while claimant was scheduled for a consultative evaluation of his alleged mental impairments with Dr. Damania, this examination was not performed, because claimant failed to cooperate. Nevertheless, Dr. Damania concluded from claimant's behavior during her brief contact with claimant that he was able to understand, carry out and remember simple instructions. (AR 179).

Claimant also makes a cursory argument that the ALJ failed in his duty to develop the mental health records. (Court Doc. 16, p. 3). However, it is claimant's duty to prove that he is disabled. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require").

///

///

The Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a). 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). As noted above, claimant failed to provide the ALJ with any objective medical evidence suggesting that claimant's depression and anxiety precluded him from engaging in simple repetitive tasks. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. The evidence simply revealed that claimant is not as limited mentally as he alleges. The ALJ was not required to further develop the record. Despite claimant's assessed depression and anxiety, the record does not indicate that claimant is incapable of performing simple repetitive tasks. (AR 23). Accordingly, the undersigned concludes that the ALJ's findings regarding claimant's mental impairments and restrictions are without error.

**2. Physical Ability**

Claimant also contends that the ALJ erred by failing to provide a proper basis for his physical RFC finding. (Court Doc. 16, pp. 4-5). Claimant argues that the ALJ erred by rejecting the opinion of Dr. Kaleka and instead relying on the opinion of the examining physician, Troy Smith, M.D. (Court Doc. 16, p. 4).

Progress notes from claimant's treating physician, Dr. Kaleka, dated June, July and August 2002, reveal that he diagnosed claimant with arthritis, post traumatic stress syndrome and depression/anxiety. (AR 185-186, 194-195). On March 3, 2003, Dr. Kaleka filled out a questionnaire indicating that he felt claimant's rheumatoid arthritis precluded him from performing any full-time

///

///

work at any exertional level, including the sedentary level. (AR 211). Dr. Kaleka opined that claimant could sit or stand and/or walk, at one time, for one to two hours and could sit or stand and/or walk, over an eight-hour period, for two to four hours. (AR 211).

In making his physical RFC determination, the ALJ rejected Dr. Kaleka's opinions and instead relied on the opinions of consultative examining physician, Dr. Smith. (AR 20-23). The ALJ determined that Dr. Kaleka's opinions were not persuasive because his findings were unsupported by any actual laboratory findings. (AR 21-22). The ALJ noted that Dr. Kaleka provided no real evidence to support or confirm his findings. (AR 23). As noted by the Commissioner, a lack of adequate clinical findings is an appropriate basis to discount even a treating physician's opinion. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Flaten, 44 F.3d at 1463-64; Fair, 885 F.2d at 604; (Court Doc. 20, p. 6). The ALJ also noted that claimant's hearing testimony was inconsistent with Dr. Kaleka's findings regarding hand pain suggesting that his difficulties had resolved or improved.[3] (AR 23).

On the other hand, Dr. Smith's report is replete with clinical findings, including range of motion and strength tests. (AR 173-175). Dr. Smith examined claimant on March 19, 2002. (AR 172-176). Claimant reported his chief complaint as low back pain, and no other complaints of joint pain were noted in claimant's reported history. (AR 172). Dr. Smith noted claimant's general appearance as a well-developed, well-nourished, thin male who appears to be in no acute distress. (AR 173). He noted claimant walks without evidence of a limp, claimant could stand on heels and toes without difficulty, the contour, curvature and alignment of the cervical spine was normal with no spasm or tenderness present and straight leg raises were perform to 80 degrees without pain. (AR 173). Dr. Smith found no evidence of joint pain, swelling, tenderness, or inflamation. (AR 174). He diagnosed claimant with low back pain due to unknown etiology. (AR 175). Dr. Smith concluded

///
///

---

[3] At the administrative hearing, Claimant testified that he does not have pain or swelling in any of his joints besides his low back. (AR 49).

that claimant should avoid work requiring repeated bending or heavy lifting, but determined that claimant was able to lift 50 pounds occasionally and 25 pounds frequently, could sit, stand and walk six hours in an eight hour work day with rest breaks and could kneel, squat and climb stairs. (AR 175).

On May 3, 2002, a reviewing state agency physician, indicated that claimant's physical exam was normal except for some very slight decrease in his flexion of his back. (AR 193). The non-examining physician noted that it did not appear that claimant's condition was severe enough to limit his ability to work. (AR 193).

According weight to the opinions of examining physician Dr. Smith, the ALJ concluded that claimant retains the ability to perform work at the medium level of exertion. (AR 23). The ALJ provided specific, legitimate rationale for discounting Dr. Kaleka's findings. Flaten, 44 F.3d at 1463; Fair, 885 F.2d at 605. Specifically, Dr. Kaleka's findings were unsupported by laboratory findings or reports, and his reports of hand pain were contradicted by claimant's hearing testimony denying any pain or swelling in other joints other than his lower back. Dr. Smith's findings regarding claimant's physical ability were supported by clinical findings and uncontradicted by any other medical professional of record, other than Dr. Kaleka. Accordingly, the ALJ was justified in adopting Dr. Smith's findings to conclude that claimant retains the physical RFC to perform a full range of medium exertion work. (AR 23). The ALJ's RFC determination in this case was based on substantial evidence and was entirely proper.

**B. Claimant's Credibility**

Claimant lastly asserts that the ALJ erred by failing to fully and fairly evaluate his testimony. (Court Doc. 16, pp. 5-6). It is the province of the ALJ to make credibility determinations. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the
///

ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The Ninth Circuit has stated that valid reasons to reject subjective complaints include weak objective support for the claims, inconsistent reporting, infrequent treatment, helpful medications, conservative care, and daily activities inconsistent with disability. Tidwell v. Apfel, 161 F.3d 599, 601-602 (9th Cir. 1998).

The ALJ indicated that the overall nature, onset, duration, frequency, radiation and intensity of claimant's alleged physical limitations did not appear to be corroborated by laboratory, clinical and x-ray findings. (AR 22). The ALJ thus found that claimant's allegations regarding his limitations were not credible to the degree alleged. (AR 25). Accordingly, in reaching his RFC conclusion, the ALJ determined that claimant was not fully credible.

As discussed above, the ALJ appropriately determined that the claimed severity of claimant's physical and mental limitations was not substantiated by laboratory or clinical findings. Supra. Furthermore, as indicated by the Commissioner, in addition to a lack of objective support for the claimed severity of his impairments, the ALJ also noted the disparity between claimant's testimony concerning his low back pain and his minimal treatment for back problems, the disparity between his complaints of mental problems and the minimal and conservative treatment he has received fro such problems, the lack of treatment records documenting the frequency of treatment he testified he had received from Dr. Tieu, and the lack of medical records documenting ongoing treatment for his impairments. (Court Doc. 20, p. 7). The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Nevertheless, the ALJ properly evidenced specific and legitimate reasons for according little weight to claimant's

///

testimony, and claimant provides little argument to rebut the reasons provided by the ALJ for finding claimant's credibility lacking. (Court Doc. 16, pp. 5-6). The weight of the record evidence suggests that claimant's impairments and symptoms were as determined by the ALJ, and the reasons provided by the ALJ for rejecting claimant's allegations were sufficient. Accordingly, the ALJ did not err by concluding that claimant's allegations regarding his limitations were not entirely credible in this case.

## CONCLUSION

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny claimant disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Bounthom Chaleunsap.

IT IS SO ORDERED.

**Dated:   June 10, 2005**            /s/ Theresa A. Goldner
j6eb3d                                UNITED STATES MAGISTRATE JUDGE